FILED

2007 Dec-14  AM 11:40
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | | |
|---|---|---|
| DEITRICK J. WALLACE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 7:06-CV-01776-LSC |
| | ) | |
| FONTAINE TRAILER COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

MEMORANDUM OF OPINION

I.    Introduction.

The Court has for consideration Fontaine Trailer Company's ("Defendant") motion for summary judgment, which was filed on July 16, 2007.  (Doc. 20.)  The Court also has Defendant's motion to strike the declaration of William White, which was filed on August 20, 2007.  (Doc. 25.)

Deitrick Wallace ("Plaintiff") filed suit against Defendant alleging violations of the Family Medical Leave Act, 29 U.S.C. § 2601 et seq. ("FMLA"), and racial discrimination under 42 U.S.C. § 1981 ("§ 1981").  (Doc. 1.)  Specifically, Plaintiff alleges that he was terminated in retaliation for

taking medical leave under the FMLA and that his firing was the result of disparate treatment based upon his race.[1]  The issues raised in Defendant's motions have been briefed by both parties and are now ripe for consideration.  Upon full consideration of the legal arguments and evidence presented, Defendant's motion to strike and motion for summary judgment will be granted.

II.    Facts.[2]

Deitrick Wallace, an African-American male, began employment with Defendant as a new-hire welder on October 13, 2003.  (Doc. 18 at 2.)  After completing the company's welding school, Plaintiff passed the test for promotion and was promoted to the grade of P-3 welder at the end of his

---

[1]As a preliminary matter, the Court notes that Plaintiff has abandoned his race claims other than the claim concerning Plaintiff's termination under Defendant's Attendance Policy.  Furthermore, the Joint Status Report (Doc. 18) makes it clear that Plaintiff has abandoned his claim for "Denial of Leave under the FMLA."  That claim was rendered irrelevant by discovery in the case which established that Plaintiff had exhausted his points regardless of whether the alleged FMLA qualifying absences were considered excused or unexcused.

[2]The facts set out in this opinion are gleaned from the parties' submissions of facts claimed to be undisputed, their respective responses to those submissions, and the Court's own examination of the evidentiary record.  All reasonable doubts about the facts have been resolved in favor of the nonmoving party.  *See Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002).  These are the "facts" for summary judgment purposes only.  They may not be the actual facts.  *See Cox v. Adm'r U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994).

90-day probationary period.  *Id.*  In August 2004, Plaintiff passed another qualifications test and was promoted to the P-4 welding position.  *Id.* Plaintiff's department was then transferred from the main plant to Defendant's new fabrication plant in January 2005.  *Id.* at 3.  In early 2005, a P-4 welder position became available on the day shift, which Plaintiff bid on and received.  *Id.*  Plaintiff was then transferred to the day shift and placed under the supervision of David Hood ("Hood").  *Id.*

In February 2005, Defendant implemented a new attendance policy based upon a points system.  *Id.*  Under the policy, all absences are considered unexcused unless they fall within a narrow category of exceptions.  *Id.*  The policy states that employees are to be counseled or "coached" by their supervisor when they reach three, two, and one points remaining.  *Id.*  According to the policy, when an employee reaches zero points, they are terminated.  *Id.*

On March 14, 2005, Plaintiff told Hood that he needed to leave work early to attend a doctor's appointment with his wife.  *Id.*  At the doctor's office, Plaintiff obtained paperwork to take back to the office, which he gave to the fabrication plant manager, Jim Simister ("Simister").  (Doc. 22

at 5, 6.)  Plaintiff then missed work on March 15-16, 2005, because his wife had gallbladder surgery and she was required to stay in the hospital overnight.  (Doc. 18 at 4.)  Plaintiff returned to work on March 17, 2005. (Doc. 22 at 6.)  Although Hood told Plaintiff that the absences for his wife's surgery should be excused, John Ramsey, the plant's accounting manager, later informed Plaintiff that the absences did not qualify for FMLA coverage. *Id.* at 7, 8.

Plaintiff was absent on several occasions in April and May of 2005 related to a potential divorce from his wife.  *Id.* at 8.  Plaintiff asked Hood if he could switch to the third shift so that he could handle his legal affairs during the day and still work a full shift in the evening.  *Id.*  Hood then contacted his supervisor, Simister, who denied Plaintiff's request to transfer to the third shift.  *Id.* at 9.  At some point during April or May of 2005, Plaintiff inquired about his remaining points, but Hood was unable to tell Plaintiff how many points he had under the policy.  *Id.*

On July 7, 2005, there were no day shifts due to the performance of needed maintenance, but day shift employees were asked to work the third shift.  (Doc. 18 at 4.)  On the afternoon of July 7, however, Plaintiff learned

that his son was going to have surgery on July 8, to remove a piece of wood

lodged in his cheek.  (Doc. 22 at 8.)  As a result, Plaintiff missed work on

July 8.  *Id.*  Plaintiff left a message notifying Ramsey that he would be

absent, but he did not discuss the treatment of his absence under FMLA.  *Id.*

On July 12, Hood prepared a warning for Plaintiff indicating that he

had two points remaining under the attendance policy.  (Doc. 20 at 6.)

Before issuing the warning, however, Hood rechecked his records and

determined that Plaintiff only had one point remaining.  *Id.*  Hood changed

the number of points remaining on the warning form to reflect the correct

number, but failed to give Plaintiff the warning on July 12.  *Id.*  Plaintiff was

absent from work on July 13, 14, and 15, as a result of illness.  (Doc. 22 at

10.)  On July 15, Hood prepared a discipline form explaining that Plaintiff

had exhausted his points under the attendance policy and, as a result, was

terminated.  (Doc. 18 at 4.)

When Plaintiff returned to work on July 18, 2005, he was called to a

meeting with Hood, John Ramsey, and Bill Harrison in Simister's office.[3]  At

---

[3]John Ramsey was the Accounting Manager at the Fabrication plant and performed
some human resources functions, however, he was not a decision-maker regarding
Plaintiff's termination.  (Doc. 20 at 8.)  Bill Harrison was another supervisor at the

the meeting, Plaintiff was presented with two discipline forms.  (Doc. 22 at

11.)  Plaintiff had not received any discipline forms or coaching of any kind

prior to this meeting.  *Id.*  The first form stated, "[p]er the Fontaine

Fabrication policy this (sic) a written warning to inform you that you have

1 attendance points remaining. The Policy states that if you exhaust the

remain (sic) point that you are up for termination from Fontaine

Fabrication."  *Id.*  In the same meeting, Plaintiff was presented with a

second form informing him that he was terminated effective immediately.

*Id.*  During the meeting, Plaintiff asked why Hood had not conducted the

required coaching sessions and Hood replied, "[i]t's my fault.  I didn't keep

up with it like I was supposed to."  *Id.* at 12.   Plaintiff's last day of

employment for Defendant was July 18, 2005.  (Doc. 18 at 5.)  Plaintiff was

the first employee at the fabrication plant terminated under the new

attendance policy.  (Doc. 20 at 8.)  He was replaced by Jeremy Adamson,

a white male.  (Doc. 22 at 17.)  Later in July 2005, Adam Norris, a Caucasian

employee working under Hood's supervision, was terminated under the

_____

Fabrication plant.  (Doc. 22 at 17.)

Attendance Policy.  (Doc. 20 at 8.)  Other Caucasian employees at the Fabrication plant who have exhausted their points under the Attendance Policy have also been terminated.  *Id.* at 9.

III.  Standard.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the evidence] which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant can meet this burden by presenting evidence showing that there is no genuine dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-23.  In evaluating the arguments of the movant, the Court must view the evidence in the light most favorable to the nonmoving

party.  *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996).

Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [her] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)).  "A factual dispute is genuine only if a 'reasonable jury could return a verdict for the nonmoving party.'" *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002) (quoting *U.S. v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1437 (11th Cir. 1991)).

IV.    Evidentiary Motion.

As a preliminary matter, the Court will address Defendant's evidentiary motion seeking to strike the declaration of William White ("White") (Doc. 23 Ex. #2).  (Doc. 25.)  This declaration is offered to show that Caucasian employees were treated more favorably than African-American employees in the application of the attendance policy.  It is also offered to show that Plaintiff may have been terminated in retaliation for

taking FMLA leave.  Defendant insists that White's declaration should be struck because White was not identified as a potential witness in Plaintiff's disclosures as required under Federal Rule of Civil Procedure 26.  *Id.* at 1.

A party is required under federal law to identify and disclose all witnesses that it will use to support its claims or defenses at trial.  Fed. R. Civ. P. 26(a)(1)(A).  Furthermore, Rule 26(e) imposes upon a party the duty to supplement these disclosures when the party learns that the information is either incomplete or incorrect, unless the information has been made known to the parties through discovery or writing.  Fed. R. Civ. P. 26(e)(1). Parties who fail to satisfy these disclosure and supplementation requirements are prohibited, pursuant to Fed. R. Civ. P. 37(c)(1), from using the undisclosed evidence "at trial, at a hearing, or on a motion, unless the failure was substantially justified or is harmless."  Fed. R. Civ. P. 37(c)(1). *See also Cooper v. Southern Co.*, 390 F.3d 695, 728 (11th Cir. 2004) ("it was within the sound discretion of the trial judge to sanction plaintiffs for their failure to disclose by enforcing the unambiguous terms of Rule 37(c)"). However, Rule 37 also gives the District Court the discretion to impose other appropriate sanctions in lieu of striking the evidence.  *Id.*

In evaluating whether a failure to disclose is substantially justified or harmless, the Eleventh Circuit considers: "(1) the importance of the testimony; (2) the reason for the appellant's failure to disclose the witness earlier; and (3) the prejudice to the opposing party if the witness had been allowed to testify." *Bearint ex rel. Bearint v. Dorell Juvenile Group, Inc.,* 389 F.3d 1339, 1353 (11th Cir. 2004) (citing *Rogers v. Muscogee County Sch. Dist.,* 165 F.3d 812, 818 (11th Cir. 1999).

A brief background and chronology of this case is appropriate before discussing the parties' contentions.  This action was filed on September 3, 2006, and on September 29, 2006, Defendant served it's answer.  The Court then entered an agreed upon Scheduling Order on December 7, 2006, setting deadlines for dispositive motions, witness disclosures, discovery cutoffs, and disclosure supplements.  According to the Court's Scheduling Order, the parties' disclosures and discovery were to be supplemented by May 2, 2007, and discovery was to be closed on June 1, 2007.  (Doc. 9.)

During the discovery process, Plaintiff responded to Defendant's interrogatories.  The following summarizes Defendant's Interrogatory No. 7 and Plaintiff's response:

Defendant's interrogatory asked about similarly situated "white employees" who Plaintiff claims were treated more favorably than Plaintiff. In response, Plaintiff listed only two employees' names and they were similarly situated to Plaintiff regarding FMLA leave, a claim which has since been abandoned.  Plaintiff did not identify any employees alleged to have been treated more favorably with regards to the attendance policy. Plaintiff never supplemented his responses to this interrogatory.  (Doc. 25 at 3.)

White was discussed by Plaintiff in response to an interrogatory inquiring about the Advanced Welder position, a claim also abandoned by Plaintiff.  (Doc. 25 at 4.)  Plaintiff's response to Defendant's Interrogatory No. 4 concluded as follows:

> When the job opening came up for Aluminum Welder on first shift, I bid on it and won the position.  My supervisor on second shift, William White (African-American), warned me that if I went to first shift, I would be on my own because I would be the only African-American on day shift.  He was correct in the end because of what later happened to me.  I went to day shift in February 2005 and was terminated on July 18, 2005.  William White was the first African-American Supervisor at Fontaine in its history at Haleyville, Alabama.  He had been employed 17 years.

*Id.*

White's name is mentioned only one other time in Plaintiff's interrogatory responses.  Interrogatory No. 11 asked about conversations Plaintiff had with persons about the matters or events alleged in the Complaint.  Among Plaintiff's response was "William White - See response to Interrogatory #1" (presumably Plaintiff meant Interrogatory No. 4 since White's name is not even mentioned in response to Interrogatory No. 1, concerning Plaintiff's damages).  *Id.* at 5.

On May 2, 2007, Plaintiff served Defendant with Plaintiff's Supplemental Initial Disclosures, which included and added to the information that Plaintiff had previously disclosed.  *Id.* at 3.  In that document, Plaintiff listed thirteen potential witnesses but did not include William White.  *Id.*

Plaintiff was then deposed on May 3, 2007.  At his deposition, Plaintiff testified that White told him, on a previous occasion, that Hood would try to "get rid" of him if he went to day shift.  (Wallace Dep. at 102.)  Plaintiff also claimed that White told him that Hood was prejudiced and that he had previously heard Hood use the "n" word.  (Wallace Dep. at 107-108.)

Plaintiff further testified that White, who was a supervisor, told him that supervisors were allowed to add points back to employees under the attendance policy and that he should have received three coaching sessions before being terminated.  (Wallace Dep. at 214.)

Further, on July 16, 2007, Defendant filed it's motion for summary judgment, along with a supporting brief ("Defendant's Brief") and evidentiary materials.  In Defendant's Brief, the section entitled "Material Facts Which Are Not In Dispute" included the following:  "51.  Plaintiff has not identified any similarly situated white employees allegedly treated differently than he in the application of the points system.  (Plaintiff's Response to Defendant's First Interrogatories, No. 7)."  (Doc. 20 at 9.)

Plaintiff admitted that this was correct in his response, filed on August 8, 2007.  (Doc. 22 at 3.)  However, Plaintiff included in his evidentiary submission in opposition to Defendant's motion for summary judgment, White's declaration.

Before the Court is required to address the merits of the motion to strike, Defendant must show that Plaintiff "fail[ed] to disclose information required by Rule 26(a) or 26(e)(1), or to amend a prior response to discovery

as required by Rule 26(e)(2) . . . ."  Fed. R. Civ. P. 37(c)(1).  In making that

determination, it is undisputed that White's name was not disclosed as a

potential witness as part of Plaintiff's disclosure obligations.  White's name

was also not added when Plaintiff supplemented his disclosures prior to the

close of discovery on May 2, 2007.

While Plaintiff's failure to disclose is not in dispute, Plaintiff contends

that disclosure was not necessary because the information regarding the

potential for White to serve as a witness was made known to Defendant

through the discovery process.  *See* Fed. R. Civ. P. 26(e).  (Doc. 29 at 3.)

More specifically, Plaintiff claims that Defendant was provided knowledge

that White was a potential witness in this matter through Plaintiff's

interrogatory responses and Plaintiff's deposition.  *Id.*

The Court disagrees.  Plaintiff's isolated references to White during

discovery are insufficient to satisfy Rule 26(e).  White's name appears

several times in responses to interrogatories, where he is identified as the

only African-American supervisor at the fabrication plant and someone with

whom Plaintiff discussed the events alleged in the Complaint.  These casual

remarks about White's history with the company in responses to

interrogatories did not disclose to Defendant that White was a potential witness in the matter.  Furthermore, Plaintiff was asked **point blank** in Interrogatory No. 7 to identify all similarly situated white employees who were treated differently than Plaintiff was treated with respect to the attendance policy.  None of the names listed in White's declaration were provided in response.[4]

Further, Plaintiff's statements in his deposition, that White told him that David Hood would try to "get rid" of him if he went to day shift and that White believed that Hood was prejudiced and had previously used the "n" word, in no way indicates that Plaintiff intended to use White as a witness.

---

[4]In an effort to justify not supplementing his response to Defendant's interrogatory No. 7, Plaintiff claims that he "did not know about [the comparitors listed in White's declaration]." (Doc. 29 at 4.)  The Court finds this extremely inconsistent.  On one hand, Plaintiff accuses Defendant of being "disingenuous" for claiming that it did not have adequate information through the discovery process to know that White was a potential witness.  *Id.*  In his response to Defendant's motion to strike, Plaintiff goes so far as to boldly assert that Defendant "had the ability to interview or depose Mr. White *well before discovery concluded*."  *Id.* (emphasis added).  In the same document, however, Plaintiff claims that he did not know about the alleged comparitors within the time proscribed by the Scheduling Order in order to allow him to supplement his interrogatory responses.  Apparently, Plaintiff would have the Court believe that Defendant is "disingenuous" for not knowing that which also escaped the apparent "excusable neglect" of Plaintiff.  The Court finds this logic unpersuasive.  Reasonable diligence would have disclosed far in advance of trial that not only could White potentially serve as a witness in this matter, but also that he may have possessed valuable comparitor evidence.

By any definition, the chain of events surrounding White's declaration are contrary to both the letter and spirit of the Federal Rules of Civil Procedure. Discovery in federal court is not a game of hide the ball. One major purpose of the liberalized civil discovery rules is to prevent surprise in litigation.

While it is clear that Plaintiff violated the rules of discovery, the Court is still left with the difficult task of fashioning an appropriate remedy. In doing so, the Eleventh Circuit guides the Court to consider: (1) the importance of the testimony; (2) the reason for the appellant's failure to disclose the witness earlier; and (3) the prejudice to the opposing party if the witness had been allowed to testify. *See Bearint*, 389 F.3d at 1353. The Court now turns to consideration of these factors.

It is without question that White's declaration is vital to Plaintiff's case. With regard to Plaintiff's FMLA claim, White's declaration indicates that he personally heard Hood talk about employees who had taken FMLA leave. He asserts that he overheard Hood say that, "we need to get rid of these dead asses." (Doc. 23 Ex #2 at 4.) This statement alone could create an issue of fact such that a juror might reasonably conclude that there was

a causal connection between Plaintiff's FMLA leave (discussed below) and his subsequent termination.

Likewise, White's declaration is also vital to Plaintiff's ability to establish pretext for his racial discrimination claim. White's declaration states that, "the following white employees on David Hood's shift should have been terminated under the attendance policy but Hood handled their situations and the attendance policy so that they were not terminated: John Golightly, Terry Hurley, Justin York, Jonathan Goggins, Eddie Head, Richard Sanderson and Brent Nix." *Id.* This evidence could establish not only that Plaintiff was treated less favorably than Caucasian employees, but also that Hood's stated reason for terminating Plaintiff was pretext for racial discrimination. While the Court recognizes the importance of White's declaration, this factor must be balanced with other considerations.

As this Court has determined, there is no substantial justification for Plaintiff's failure to disclose White prior to his response to Defendant's motion for summary judgment. In addition, not only did Plaintiff fail to disclose White as a potential witness, but he also agreed with Defendant that there was no dispute that Plaintiff had offered no evidence of

comparitors to show that Caucasian employees were treated differently than Plaintiff in the application of the attendance policy and points system.[5]  In fact, when Defendant filed its motion for summary judgment, it had no reason to believe that this issue was even disputed by Plaintiff.  It is clear that Defendant relied on Plaintiff's disclosures and discovery responses in framing what discovery requests were necessary, who was necessary to depose, and what questions to ask during depositions.   Certainly, if disclosures or discovery had identified White as a witness who would testify about alleged comparators and/or alleged statements made by Hood about employees who took FMLA leave, Defendant could have deposed White and attempted to discredit his statements.  However, because Plaintiff failed to disclose White as a witness, Defendant had no reason to depose him.  *See Bearint,* 389 F.3d at 1353.

Plaintiff argues that any prejudice can be eliminated by allowing Defendant to depose White at this point.  The Court disagrees.  Discovery

---

[5]*See* Defendant's Facts which are Not in Dispute # 51.  (Doc. 20 at 9.)  This fact stated that Plaintiff has not identified any similarly situated white employees allegedly treated differently than he in the application of the points system.  This was admitted by Plaintiff in his response.  (Doc. 22 at 3.)

concluded **over five months ago.**  A motion for summary judgment has been filed and briefed.  Allowing White's declaration to be considered would force the Court to reopen discovery and allow the filing of a new motion for summary judgment, all at a substantial cost to Defendant.  Plaintiff's proposed remedy would only serve to reward his conduct and to encourage similar conduct in future litigation.

Because Plaintiff failed to identify William White as a potential witness or to include White in his supplementary disclosures, Plaintiff is barred from introducing White's declaration in opposition to Defendant's motion for summary judgment.  Plaintiff has failed to demonstrate how his discovery violations were either substantially justified or harmless; therefore, exclusion of White's declaration is appropriate.  Defendant's motion to strike will be granted.

V.    Analysis.

A.    FMLA Claim.

The FMLA provides eligible employees with "a total of 12 workweeks of leave during any 12-month period" for specified reasons, including "to care for the spouse, or a son, daughter, or parent, of the employee, if such

spouse, son, daughter, or parent has a serious health condition."  29 U.S.C.
§ 2612(a)(1)(c).  At the expiration of the leave period, the employer must
restore the employee "to the position of employment held by the employee
when the leave commenced," or to an equivalent position.  29 U.S.C. §
2614(a)(1).  The FMLA creates a private right of action for equitable relief
and money damages for employer violations.  29 U.S.C. § 2615(a)(1),
2617(a).  The Eleventh Circuit has held that the FMLA creates two distinct
types of claims: (1) "interference" claims, in which an employee asserts
that his employer denied or otherwise interfered with his substantive rights
under the FMLA; and (2) "retaliation" claims, in which an employee asserts
that his employer retaliated against him because he engaged in activity
protected by the FMLA.  *Strickland v. Water Works & Sewer Bd. of the City
of Birmingham*, 239 F.3d 1199, 1206-07 (11th Cir. 2001); *Wascura v. City of
S. Miami*, 257 F.3d 1238, 1247-48 (11th Cir. 2001).  With regards to the
"retaliation" cause of action, the statute makes it "unlawful for any
employer to discharge or in any other manner discriminate against any
individual for opposing any practice made unlawful by this subchapter [of
the FMLA]."  29 U.S.C. § 2615(a)(2).

Plaintiff alleges that his termination on July 18, 2005, constitutes retaliation in violation of the FMLA.  (Doc. 1 at 4.)  In order to succeed on his claim, Plaintiff must prove that the employer acted with the requisite retaliatory intent.   This intent may be proven through either direct or circumstantial evidence.  Because Plaintiff does not contend that he has direct evidence of Defendant's retaliatory intent, the Court must analyze the  circumstantial  evidence  of  this  case  under  the  specialized burden-shifting analysis delineated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973), for evaluating Title VII retaliatory discharge claims.  *See Brungart v. Bell South Telecomm., Inc.*, 231 F.3d 791, 798 (11th Cir. 2000); *Graham v. State Farm Mut. Ins. Co.*, 193 F.3d 1274, 1283 (11th Cir. 1999) (affirming based on the holding and rationale of the district court's order, which in turn applied the *McDonnell-Douglas* framework to FMLA retaliation claim).

A  prima  facie  case  of  retaliation  under  the  *McDonnell  Douglas* framework requires that Plaintiff prove that: (1) he engaged in a statutorily protected activity, (2) he suffered an adverse employment decision, and (3) the decision was causally related to the protected activity.  *Strickland*, 239

F.3d at 1207.  If Plaintiff makes out a prima facie case, the burden shifts to Defendant to articulate a legitimate reason for the adverse action.  *Smith v. Bell South Telecomm., Inc.*, 273 F.3d 1303, 1314 (11th Cir. 2001).  If Defendant does so, Plaintiff must then show that Defendant's proffered reason for the adverse action is pretextual.  *Id.*

It is undisputed that Plaintiff suffered an adverse employment action, as his employment was terminated.  Defendant, however, argues that Plaintiff cannot demonstrate that he engaged in statutorily protected conduct or that there is a causal link between the alleged protected conduct and his termination.

The determination of whether or not Plaintiff engaged in statutorily protected conduct is a close question.  "An employee must provide the employer at least 30 days advance notice before FMLA leave is to begin if the need for the leave is foreseeable."  29 C.F.R. § 825.302 (a).  When the need for FMLA leave is not foreseeable, the regulations generally require employee to provide "notice to the employer of the need for FMLA leave as soon as practicable under the facts and circumstances of the particular case."  29 C.F.R. § 825.303 (a).

Defendant argues that Plaintiff failed to meet the FMLA's notice requirement because he failed to request "FMLA leave" from his supervisor, David Hood, for either his wife's or his son's surgeries.  (Doc. 20 at 15.) Plaintiff argues that he clearly attempted to exercise his rights under the FMLA when he took off work in order to be with his wife during her surgery in March 2005.

The absences related to his wife's surgery certainly appear to be taken in connection with FMLA protected activity.  With regards to the notice given by Plaintiff, the federal regulations require that:

> [a]n employee shall provide at least verbal notice sufficient to make the employer aware that the employee needs FMLA qualifying leave, and the anticipated timing and duration of the leave.  The employee need not expressly assert rights under the FMLA or even mention the FMLA, but may only state that leave is needed for an expected birth or adoption, for example.  The employer shall inquire further of the employee if it is necessary to have more information about whether FMLA leave is being sought by the employee.

29 C.F.R. § 825.302 (c).

Under this standard, Defendant, through David Hood, was on notice regarding Plaintiff's attempt to invoke the protection of the FMLA.  As soon as Plaintiff heard from his wife that he needed to come to the doctor's

office because she needed surgery, he informed Hood about the situation. (Doc. 18 at 3.)   In addition to his conversations with Hood, Plaintiff presented the plant manager, Simister, with the doctor's note regarding his wife's surgery and had "a couple of conversations with John Ramsey about the surgery . . . and the use of FMLA."  (Doc. 22 at 20.)   These facts establish that Plaintiff has carried his burden of establishing that he engaged in protected activity, particularly when viewed in the light most favorable to Plaintiff.

In order to establish a causal connection between the employee's protected activity and the adverse employment action, Plaintiff must show "that the protected activity and the adverse action were not wholly unrelated."  *Brungart v. BellSouth*, 231 F.3d 791, 799 (11th Cir. 2000) (quoting *Clover v. Total Sys. Servs., Inc.*, 176 F.3d 1346, 1354 (11th Cir. 1999).  Generally, "[c]lose temporal proximity between protected conduct and an adverse employment action is . . . 'sufficient circumstantial evidence to create a genuine issue of material fact of a causal connection.'" *Hurlbert v. St. Mary's Health Care System, Inc.*, 439 F.3d 1286, 1298 (11th Cir. 2006) (quoting *Brungart*, 231 F.3d at 799).  "The cases that accept mere

temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be 'very close[.]'" *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (*citing Richmond v. ONEOK, Inc.*, 120 F.3d 205, 209 (10th Cir. 1997) (3-month period insufficient); *Hughes v. Derwinski*, 967 F.2d 1168, 1174-75 (7th Cir. 1992) (4-month period insufficient).  In *Breeden,* the Supreme Court held that "action taken . . . 20 months later suggests, by itself, no causality at all."  *Id.* at 274.

In this case, Plaintiff's request for FMLA leave took place in March of 2005, and he was terminated in July 2005.  Plaintiff argues that the four month gap between the protected activity and the termination is sufficient temporal proximity to establish a causal connection.[6]

This argument alone, however, fails to create an issue of fact such that a reasonable juror could conclude that Plaintiff was fired because he

---

[6]Plaintiff also attempted to rely on statements made in the declaration of William White as evidence to support a causal connection between his protected activity and Defendant's adverse employment action.  As discussed above, these statements were not considered by the Court in evaluating the appropriateness for summary judgment.

sought FMLA leave.  Here, four months elapsed between Plaintiff's FMLA leave and the adverse employment action.  Plaintiff has failed to present further evidence that would support an inference that this FMLA leave was the reason for Plaintiff's termination.  To the contrary, the evidence establishes that Plaintiff was not terminated because he sought FMLA leave.

Plaintiff admits that he "was tardy, left early and missed numerous other days after the attendance policy was implemented" in February 2005, including being "absent from work on July 13, 14, and 15, 2005." (Defendant's Material Facts Nos. 28, 36, admitted by Plaintiff.)  Also, Plaintiff had exhausted all of his points under the attendance policy regardless of whether the alleged FMLA qualifying absences were considered excused or unexcused.  (Defendant's Material Facts Nos. 37, 38, admitted by Plaintiff).  In short, Plaintiff has presented no evidence that he "was fired because [he] sought FMLA leave."  *Brungart*, 231 F.3d at 798.  We conclude that Plaintiff has failed to create a genuine issue of fact that a reasonable jury could find a causal link between his request for leave and his termination.

Further, even if Plaintiff could meet his prima facie case of FMLA

retaliation, Plaintiff's claim would nonetheless fail because he has failed to point to *any* evidence that Defendant's legitimate non-discriminatory reason for his termination of employment was a pretext for a retaliation under the FMLA.  Nothing indicates that Plaintiff was terminated for any other reason than exhausting all of his points under the attendance policy.

B.    Race Discrimination Claim.

Plaintiff also claims that his July 18, 2005, termination was racially discriminatory in violation of § 1981.  (Doc. 1 at 5.)  Specifically, Plaintiff claims that he "was treated differently than similarly situated Caucasian employees in the application of the FMLA and attendance policies."  *Id*.

The elements of a cause of action under § 1981 are "(1) that the plaintiff is a member of a racial minority; (2) that the defendant intended to discriminate on the basis of race; and (3) that the discrimination concerned one or more of the activities enumerated in the statute." *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1270 (11th Cir. 2004) (citation omitted).

There is no dispute that Plaintiff, as an African-American, is a member of a racial minority, and that he has alleged discrimination

concerning an enumerated activity.  The issue central to the resolution of the § 1981 claim, then, is whether Plaintiff has alleged facts sufficient to support the second prong - that Defendant engaged in intentional racial discrimination.  *See Gen. Bldg. Contractors Ass'n, Inc. v. Pa.*, 458 U.S. 375, 391 (1982) (holding that "§ 1981 . . . can only be violated by ***purposeful*** discrimination." (emphasis added)).

Under § 1981, Plaintiff may rely on direct or circumstantial evidence of discrimination in order to show that Defendant intended to discriminate against him.  *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 526 (1993) ("Because [§ 1981] tolerates no racial discrimination, subtle or otherwise, we devised a framework that would allow both plaintiffs and the courts to deal effectively with employment discrimination revealed only through circumstantial evidence") (internal quotations and citations omitted); *Cooper,* 390 F.3d at 723 (holding that the "plaintiff can establish discriminatory intent through direct or indirect evidence.")  In this case, Plaintiff has presented only circumstantial evidence in support of his complaint; therefore, once again the Court evaluates his evidence according to the *McDonnell Douglas* burden-shifting test.  *See McDonnell Douglas*, 411

U.S. 792; *Cooper*, 390 F.3d at 723-24.

Under this test, Plaintiff has the initial burden of establishing a prima facie case for each element of his claim.  *Id*. at 802.  The same prima facie standards apply to § 1981 and Title VII discrimination claims because these claims "have the same requirements of proof and use the same analytical framework[.]"  *Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1330 (11th Cir. 1998).  To establish a prima facie case of discrimination, Plaintiff must show: (1) he is a member of a protected class; (2) he was qualified for the job; (3) he suffered an adverse employment action; and (4) he was replaced by someone outside the protected class or was treated less favorably than a similarly situated individual outside the protected class.  *Maynard v. Bd. of Regents of the Div. of Univs. of Fla. Dep't of Educ.*, 342 F.3d 1281, 1289 (11th Cir. 2003).  "Demonstrating a prima facie case is not onerous; it requires only that the plaintiff establish facts adequate to permit an inference of discrimination."  *Hall v. Ala. Ass'n of Sch. Bds.*, 326 F.3d 1157, 1166 (11th Cir. 2003) (citing *Holifield v. Reno*, 115 F.3d 1555, 1561-62 (11th Cir. 1997) (citations omitted).  The establishment of a prima facie case creates a presumption of discrimination.

If Plaintiff proves a prima facie case of discrimination, Defendant is required to produce evidence that there is a legitimate, non-discriminatory reason for the challenged employment action. *See McDonnell Douglas*, 411 U.S. at 802; *Chapman v. AI Transp.*, 229 F.3d 1012, 1024-25 (11th Cir. 2000); *Armstrong v. Flowers Hosp., Inc.*, 33 F.3d 1308, 1313-14 (11th Cir. 1994). "The presumption of discrimination is then rebutted and the employer is entitled to summary judgment unless Plaintiff proffers evidence sufficient to create a genuine issue of material fact that discrimination was actually the reason for the challenged action." *Kelliher v. Veneman,* 313 F.3d 1270, 1275 (11th Cir. 2002) (citing *Chapman*, 229 F.3d at 1024-25). Simply stated, if Defendant successfully rebuts the presumption of discrimination, the burden shifts back to Plaintiff to discredit the proffered non-discriminatory reasons by showing that they are pretextual.

It is undisputed that Plaintiff has met the requirements of the first three elements of a prima facie case of discrimination. Defendant challenges only Plaintiff's ability to demonstrate that similarly situated non-minority employees were treated more favorably than Plaintiff.

The Court need not make this determination, however, because

Defendant has articulated a legitimate non-discriminatory reason for Plaintiff's termination and Plaintiff has not offered evidence that Defendant's proffered reasons were pretext for unlawful race discrimination.

### 1.   Defendant's Legitimate Non-discriminatory Reasons.

In this case, Defendant contends that Plaintiff exhausted his points under the attendance policy and, therefore, his discharge was proper. In February 2005, Defendant instituted a new attendance policy based upon points. Under the policy, when an employee reaches zero points, they are terminated. Defendant contends that Plaintiff reached zero points under the policy and was thereafter properly terminated. This explanation satisfies Defendant's burden of articulating a legitimate, non-discriminatory reason for terminating Plaintiff's employment. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507 (1993). In fact, Plaintiff admits that his number of absences was sufficient to support his termination under the policy. The burden now shifts back to Plaintiff, who must be afforded "a fair opportunity to show that [Defendant's] stated reason [is] in fact pretext." *McDonnell Douglas*, 411 U.S. at 804-807.

2.      Pretext.

To survive summary judgment, Plaintiff must provide evidence that creates a genuine issue of material fact that Defendant's articulated, non-discriminatory reason is, instead, pretext for unlawful discrimination. *McDonnell Douglas*, 411 U.S. at 804-807; *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000) (finding that plaintiff may attempt to establish that he was the victim of intentional discrimination by showing that the employer's proffered explanation is unworthy of credence); *Combs v. Plantation Patterns*, 106 F.3d 1519, 1528 (11th Cir. 1997).  "Because the plaintiff bears the burden of establishing pretext, he must present 'significantly probative' evidence on the issue to avoid summary judgment." *Young v. General Foods Corp.* 840 F.2d 825, 829 (11th Cir. 1988) (citing *Celotex*, 477 U.S. at 322-23; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986).

"In evaluating a summary judgment motion, "the district court must evaluate whether the plaintiff has demonstrated such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable

factfinder could find them unworthy of credence." *Jackson v. Ala. State Tenure Comm'n*, 405 F.3d 1276, 1289 (11th Cir. 2005) (quoting *Combs*, 106 F.3d 1519, 1538).

In an attempt to produce "significantly probative" evidence of pretext, Plaintiff argues that Hood's racial comments "are sufficient to establish that the defendant's articulated reason is a pretext for discrimination." (Doc. 22 at 27.)  Plaintiff argues in his brief that:

> The Eleventh Circuit has held that a plaintiff may prove pretext by showing that the decision maker has made comments showing a discriminatory animus. *Miles* [*v. M.N.C. Corp.*, 750 F.2d 867, 873 (11th Cir. 1985).]  *See also La Fleur v. Wallace State Community College*, 955 F.Supp. 1406, 1419 (M.D. Ala. 1996) (holding that evidence of racial slurs by a decision maker, *in connection with other circumstantial evidence of discrimination* was sufficient for a determination of pretext.); *Shager v. Upjohn Company*, 913 F.2d 398, 402-403 (7th Cir. 1990) (stating that slurs that may even be considered to be "stray remarks" could be relevant evidence of a discriminatory motive *especially when coupled with evidence of the insincerity of the defendant's articulated reason*.)

*Id.* (emphasis added).

Without other evidence of Defendant's discrimination or insincerity, however, this argument fails to create an issue of fact under the facts of this case.  In *Miles*, the  Eleventh Circuit considered the decision maker's

comments only as one factor in determining whether there was evidence of pretext. In that case, the plaintiff also offered comparative evidence which tended to show that Caucasian employees were treated more favorably than the plaintiff was treated. *Miles,* 750 F.2d at 871. Further, the plaintiff in *Miles* also presented statistical evidence demonstrating a pattern of discriminatory hiring in favor of Caucasians. *Id.* at 872.

In this matter, any evidence of discrimination, beyond Hood's alleged racial comments, is wholly lacking. As discussed several times previously, it is undisputed that Plaintiff had exhausted his points under Defendant's attendance policy regardless of whether the alleged FMLA qualifying absences are considered excused or unexcused. Furthermore, Adam Norris, a Caucasian employee working under David Hood's supervision, was also terminated under the attendance policy in July 2005, without receiving the three required coaching sessions. In fact, all of the other employees terminated under Defendant's attendance policy have been Caucasian.

Plaintiff also asserts that his supervisor, David Hood, failed to notify him that his point total was low in contravention of the attendance policy and that Hood did not enforce the attendance policy as strictly against other

similarly situated non-minority employees.   Prior to his response to Defendant's motion for summary judgment, however, Plaintiff had not specifically alleged that any similarly situated Caucasian employees were treated more favorably than Plaintiff in the application of the points system. Because the only evidence Plaintiff attempted to offer to establish preferential treatment (White's Declaration) is not being considered, the Court is left only with conclusory allegations of discrimination.   These allegations do not raise a genuine issue of material fact that Defendant's legitimate reason for terminating Plaintiff is unworthy of credence.

VI.    Conclusion.

For the reasons stated above, Defendant's motion for summary judgment will be granted.  A separate order in conformity with this opinion will be entered.

Done this <u>14th</u> day of <u>December 2007</u>.

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
124153